UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MICHELLE W. QUARLES, | ) | Case No. 17-15211-WIL |
| | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |

**AMENDED CHAPTER 11 PLAN OF REORGANIZATION
PROPOSED BY THE DEBTOR-IN-POSSESSION**

Michelle W. Quarles (the "Debtor"), by and through counsel, Cohen Baldinger & Greenfeld, LLC, proposes this Amended Chapter 11 Plan of Reorganization (the "Plan") pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, (the "Bankruptcy Code") for payment of debts as follows:

**ARTICLE I
Introduction**

1.1. The Bankruptcy Case (defined below) was commenced by the filing of a Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code on April 13, 2017. The commencement of the Bankruptcy Case constituted an order for relief under the Bankruptcy Code. On August 25, 2017, the Bankruptcy Case was converted to a case under Chapter 11 of the Bankruptcy Code.

1.2. The Debtor is an individual residing in Prince George's County, Maryland. At all times since the commencement of this Bankruptcy Case, the Debtor has remained in possession of her assets and the management of her affairs as debtor-in-possession.

1.3 The Debtor is a retired Federal Government employee. She lives with her spouse, Donald Quarles, and her son in their residence located at 10011 Welshire Drive, Upper Marlboro MD 20772-6202 (the "Residence"). In addition to the Residence, the Debtor is the owner of two parcels of real property in the District of Columbia, one located at 5006 7th Street NW, Washington, DC 20011 (the "7th Street Property"), and a second at 3509 24th Street NE,

Washington, DC 20018 (the "24th Street Property). The Debtor receives income from her pension and from disability benefits, as well as rental payments from both the 7th Street Property and the 24th Street Property, while Mr. Quarles receives income from his employment as an inspector and auditor with In Touch Insight Inc., a business technology consulting firm operating in the District of Columbia and elsewhere in the United States.

## ARTICLE II
### Definitions

For the purposes of the Plan, the following terms shall have meanings hereinafter set forth:

2.01   "Administrative Claim" shall include professionals' fees allowed by the Bankruptcy Court, statutory fees due to the Office of the United States Trustee, and expenses incurred by the Debtor after the Petition Date.

2.02   "Allowed Claim" shall mean a Claim (as defined in Section 101(4) of the Bankruptcy Code) (a) in respect of which a Proof of Claim has been filed with the Bankruptcy Court within the applicable period of limitations fixed by Rule 3003 of the Bankruptcy Rules, or (b) which is listed in the schedules of liabilities filed by the Debtor with the Bankruptcy Court, including any amendments thereto, and is not listed as disputed, contingent or unliquidated as to amount, and further, as to any Claim, either no objections to the allowance thereof have been filed, such objections have been denied or the Claim fixed as to the amount by an order or judgment which has become a Final Order.

2.03   "Allowed Amount" shall mean the amount of any Allowed Claim. The Allowed Amount of any Allowed Claim that is an Unsecured Claim shall not include interest accruing after the Petition Date.

2.04   "Allowed Secured Claim" shall mean a Secured Claim which is an Allowed Claim.

2.05   "Allowed Unsecured Claim" shall mean an Unsecured Claim which is an Allowed Claim.

2.06 "Bankruptcy Case" shall mean the present bankruptcy case, filed under Chapter 11 of the Bankruptcy Code.

2.07 "Bankruptcy Code" shall mean Title 11 of the United States Code as enacted by the Bankruptcy Reform Act of 1978, Public Law 95-598, as subsequently amended, and such portions of Title 28 of the United States Code as are applicable to bankruptcy cases.

2.08 "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Maryland, in which the Bankruptcy Case, pursuant to which the Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceeding therefrom.

2.09 "Bankruptcy Estate" shall mean the legal and equitable Interests of the Debtor in property as set forth in Sections 541 and 1115 of the Bankruptcy Code.

2.10 "Bankruptcy Petition" shall mean the petition filed by the Debtor initiating the Bankruptcy Case.

2.11 "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure promulgated August 1, 1983, as amended.

2.12 "Bar Date" shall mean the date set by the Bankruptcy Court as the last date for filing Proofs of Claim pursuant to Bankruptcy Rule 3003(c)(3).

2.13 "Cash Distributions" shall mean distributions to Classes of Claims identified in the Plan.

2.14 "Claim" shall mean any right to payment, or right to an equitable remedy for breach of performance, if such breach gives right to payment against the Debtor, and which right exists on the Effective Date whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

2.15 "Class" shall mean a class of Claims or Interests identified pursuant to Section 1123(a) of the Bankruptcy Code for treatment under the Plan.

2.16 "Confirmation Date" shall mean the date on which the Bankruptcy Court enters a Confirmation Order.

2.17 "Confirmation Order" shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.18 The "Debtor" shall mean Michelle Quarles, the Debtor herein.

2.19 "Disclosure Statement" shall mean the Amended Disclosure Statement in Support of Plan of Reorganization, filed contemporaneously with the Plan, in its present form or as amended.

2.20 "Disputed Claim" or "Disputed Interest" shall mean a Claim or Interest (a) which is listed as disputed or contingent in the Debtor's schedules as originally filed or subsequently amended, or (b) as to which a Proof of Claim was timely filed and an objection to such Claim was filed within sixty (60) days after the Effective Date.

2.21 "Effective Date" shall mean the first business day of the first full calendar month following the entry of a Confirmation Order if the Confirmation Order has become a Final Order.

2.22 "Final Order" shall mean an order or judgment the operation or effect of which has not been stayed, and as to which order or judgment (or any revision, modification or amendment thereof), the time to appeal or seek review or rehearing has expired.

2.23 "Interests" shall mean the interests of the Debtor in any property, including the Debtor's interest in property of the Bankruptcy Estate.

2.24 "Petition Date" shall mean the date on which the Debtor filed the Bankruptcy Petition under Chapter 11 of the Bankruptcy Code, April 13, 2017.

2.25 "Plan" shall mean this Amended Chapter 11 Plan of Reorganization in its present form or as it may hereafter be amended or modified.

2.26 "Priority Claim" shall mean any Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code.

2.27 "Proof of Claim" shall mean any proof of claim filed by a claimant with the Bankruptcy Court.

2.28 "Secured Claim" shall mean any Claim which is secured by a lien against property of the Debtor, but only to the extent of the value of the collateral as of the Petition Date.

2.29 "Unsecured Claim" shall mean any Claim other than an Administrative Claim, Priority Claim or Secured Claim.

## ARTICLE III
### Classification and Treatment of Claims and Interests

3.1 **Classes of Claims and Interests**. The Plan provides for the creation of the following Classes of Claims and Interests to be paid in the following manner:

**Class I:**  **Administrative Claims.**

Under the Plan, Administrative Claims under Section 507(a)(1) of the Bankruptcy Code will be paid in full on the Effective Date. The Administrative Claims consist of Claims for (1) professionals' fees as allowed by the Bankruptcy Court and (2) fees due to the United States Trustee's Office. The Debtor's professionals' fees include fees and expenses of Cohen, Baldinger & Greenfeld, LLC (the Debtor's counsel). The Debtor estimates that unpaid professionals' fees shall be approximately $13,000.00 on the Confirmation Date. Such professionals' fees are to be paid only upon an appropriate application for payment of professionals' fees and reimbursement for expenses, and upon Bankruptcy Court approval of such application pursuant to Section 330 of the Bankruptcy Code. Counsel for the Debtor shall file an application for payment of such fees promptly upon entry of the Confirmation Order.

The Debtor is current on fees due to the United States Trustee. The Debtor prior to the Effective Date shall remain current on fees due to the United States Trustee pursuant to 11 U.S.C. §1930, and shall continue to make payment of fees due to the United States Trustee as such become due after the Confirmation Date, and shall file timely quarterly operating reports.

Class I is not impaired by the Plan.

**Class II:** **Secured Claim of Wells Fargo Bank, N.A. (First Mortgage on Residence)**

Class II consists of the Secured Claim of Wells Fargo Bank, N.A. ("Wells Fargo") against the Debtor's Residence, secured by a 1st priority deed of trust against the Residence. The Debtor's personal liability for this debt has been discharged in a prior bankruptcy case. The Debtor is currently paying adequate protection payments of $1,650 per month to Wells Fargo regarding its Claim.

The Debtor and her spouse are seeking to finalize a mortgage modification agreement concerning the Wells Fargo Claim. They have filed a mortgage modification application with Wells Fargo, and that application remains pending. If successful in modifying the mortgage, the Debtor shall treat this Claim by making contractually due payments pursuant to the modification agreement.

In the event the Debtor is unsuccessful in concluding such a modification agreement within ninety (90) days after the Effective Date, the automatic stay shall be lifted with respect to the Residence, provided that Debtor retains the right to contest in any appropriate non-bankruptcy forum efforts by Wells Fargo to foreclose its lein against the Residence.

This Class shall retain such lien rights as it holds against the property until the Claim is paid in full.

Class II is impaired by the Plan.

**Class III:      Secured Claim of Branch Banking & Trust Company (First Mortgage, 7th Street Property)**

This Class consists of the Secured Claim of Branch Banking & Trust Company ("BB&T") against the 7th Street Property, secured by a 1st priority deed of trust against the property. BB&T has filed a Proof of Claim indicating it holds a Secured Claim in the amount of $514,198.64. The Debtor disputes this amount. In addition, the Debtor's personal liability for this debt has been discharged in a prior bankruptcy case. The Debtor is currently paying adequate protection payments of $1,500 per month to BB&T regarding its Claim. The Debtor shall treat this Class by valuing the Claim at $462,500, an amount equivalent to the value of the collateral underlying the Claim, as permitted by Section 506 of the Bankruptcy Code. The Debtor shall amortize the balance due thereon over a thirty (30) year period beginning on the Effective Date at a fixed interest rate of 4.00% interest per annum, provided that the Debtor may prepay all or part of the remaining loan balance at any time. The foregoing interest rate is calculated by reference to the Thirty-Year Treasury Rate, which was 2.99% at the time of the filing of the Plan, adjusted upward by 1% for the costs of monitoring compliance with the coerced loan and the risk factors associated with the loan.

On the Effective Date, the Debtor will commence payments to this Class, including interest and principal in an amount sufficient to amortize the Allowed Claim over a nominal thirty (30) year term, with a balloon payment of unpaid principal and interest due no later than ten (10) years after the Effective Date. The Debtor estimates that the monthly payments shall be two thousand two hundred eight dollars ($2,208), followed by a balloon payment of three hundred sixty-three thousand, three hundred eighty-two dollars ($363,382).

This Class shall retain such lien rights as it holds against the property until the Claim is paid in full.

Class III is impaired by the Plan.

**Class IV:** **Secured Claim of Deutsche Bank National Trust Company, as Trustee for Harbor View Mortgage Loan Trust, Mortgage Loan Pass-Through Certificates, Series 2007-5 (First Mortgage, 24th Street Property)**

This Class consists of the Claim of Deutsche Bank National Trust Company, as Trustee for Harbor View Mortgage Loan Trust, Mortgage Loan Pass-Through Certificates, Series 2007-5 ("Deutsche Bank") against the 24th Street Property, which Deutsche Bank asserts is secured by a 1st priority deed of trust against the property. The loan is serviced by Ocwen Loan Servicing LLC. The Debtor's personal liability for this debt has been discharged in a prior bankruptcy case.

The Debtor shall treat this Class by valuing the Secured Claim at $315,000, an amount equivalent to the value of the collateral underlying the Claim, as permitted by Section 506 of the Bankruptcy Code. The Debtor shall amortize the balance due thereon over a thirty (30) year period beginning on the Effective Date at a fixed interest rate of 4.00% interest per annum, provided that the Debtor may prepay all or part of the remaining loan balance at any time. The foregoing interest rate is calculated by reference to the Thirty-Year Treasury Rate, which was 2.99% at the time of the filing of the Plan, adjusted upward by 1% for the costs of monitoring compliance with the coerced loan and the risk factors associated with the loan.

On the Effective Date, the Debtor will commence payments to this Class, including interest and principal in an amount sufficient to amortize the Allowed Claim over a nominal thirty (30) year term, with a balloon payment of unpaid principal and interest due no later than ten (10) years after the Effective Date. The Debtor estimates that the monthly payments shall be one thousand five hundred four dollars ($1,504), followed by a balloon payment of two hundred forty-seven thousand, four hundred ninety-three dollars ($247,493).

This Class shall retain such lien rights as it holds against the property until the Claim is paid in full.

Class IV is impaired by the Plan.

**Class V:** **<u>Disputed Secured Claim of BB&T (Deed of Trust, 24th Street Property)</u>**

This Class consists of the Secured Claim of BB&T against the 24th Street Property. BB&T has filed a Proof of Claim indicating it holds a Claim secured by the 24th Street Property and the 7th Street Property with a balance of $514,198.64 due on the Petition Date. The Debtor disputes this amount and disputes the validity of BB&T's lien against the 24th Street Property. The Debtor's personal liability for this debt has been discharged in a prior bankruptcy case.

The Debtor shall not treat the Claim of BB&T in the plan insofar as BB&T asserts a Secured Claim against the 24th Street Property, as BB&T's lien is wholly unsecured by any value in the collateral allegedly underlying the Claim. Upon confirmation of the Plan, BB&T's lien against the 24th Street Property shall be avoided as provided in Section 506 of the Bankruptcy Code.

Class V is not impaired by the Plan.

**Class VI:** **<u>Disputed Secured Claim of Dram Development, LLC (Deed of Trust, 24th Street Property)</u>**

This Class consists of the Secured Claim of Dram Development, LLC ("Dram") against the 24th Street Property. Dram has not filed a Proof of Claim in the Bankruptcy Case; however, it holds a third priority deed of trust against the property recorded in the land records for the District of Columbia, securing a debt in the approximate amount of $1,000. The Debtor's personal liability for this debt has been discharged in a prior bankruptcy case.

The Debtor shall not treat the Claim of Dram in the Plan, as its lien is wholly unsecured by any value in the collateral allegedly underlying the Claim. Upon confirmation of the Plan, Dram's lien against the 24th Street Property shall be avoided as provided in Section 506 of the Bankruptcy Code.

Class VI is not impaired by the Plan.

**Class VII:** **Navy Federal Credit Union (Title Lien – 2016 Jeep Cherokee)**

This Class consists of the Claim of Navy Federal Credit Union ("Navy"), which is secured by a lien against the Debtor's 2016 Jeep Cherokee. Navy filed a Proof of Claim in the Bankruptcy Case, asserting a balance due of $27,018.98 on the Claim. The Debtor is current on payments due to Navy on the Claim.

The Debtor shall treat this claim by continuing to make contractual payments to Navy as they come due after the Effective Date. This Class shall retain its lien against the Property until paid in full.

Class VII is not impaired by the Plan.

**Class VIII:** **Allowed Unsecured Claims**

This Class consists of creditors holding Unsecured Claims which are Allowed Claims (hereinafter "Allowed Unsecured Claims"). The Debtor estimates her Allowed Unsecured Claims shall be approximately $6,000.00.

The Debtor shall pay holders of Allowed Unsecured Claims in full the amount of their Allowed Claims in two payments of approximately three thousand dollars ($3000) each, made six months and one year after the Effective Date, in full satisfaction of such Claims.

Class VIII is impaired by the Plan.

**Class IX:** **Interests of the Debtor.**

At all times since the Petition Date, the Debtor has remained in control of her affairs and in possession of her assets as debtor-in-possession. The Debtor has remained current on post-petition obligations. Upon the entry of a Confirmation Order which becomes a Final Order, all the Interests of the Bankruptcy Estate in property, any remaining funds held by the Debtor and any reserves required to be held under the Plan, shall revert to the Debtor, subject to the liens and obligations required by the Plan.

The absolute priority rule of Section 1129(b) of the Bankruptcy Code states that this Class is not entitled to retain its Interest in non-exempt property of the Bankruptcy Estate unless unsecured creditors receive payment in full or consent to the Plan, or unless there is a contribution of new capital ("New Value") by the Debtor under the Plan. As all Class IX Allowed Unsecured Claims are being paid in full, and as the Debtor is not proposing to retain any non-exempt property, the absolute priority rule is satisfied.

Class IX is not impaired by the Plan.

### ARTICLE IV
### Means of Implementation of the Plan

4.1     **Effect of Confirmation**: The provisions of the Plan, once confirmed, are binding on the Debtor and on all creditors and parties-in-interest. Confirmation vests all of the Debtor's Interests in property in the Debtor free and clear of liens other than as is set forth in the Plan. Confirmation will also constitute Bankruptcy Court approval of the Debtor's assumption or rejection of executory contracts as enumerated herein and approval of any settlements disclosed in the Plan or Disclosure Statement. In the event that the Bankruptcy Court denies confirmation of the Plan, the Debtor may amend the Plan or the Bankruptcy Case may be converted to Chapter 7 or dismissed.

4.2     **Funding of the Plan**: The term of the Plan will be one hundred twenty (120) months beginning on the Effective Date. The Debtor shall fund payments under the Plan from rental income and from income from employment, as well as the Debtor's pension and social security income. The Debtor has submitted as Exhibit "B" to the Disclosure Statement (filed herewith) a Cash Flow Budget showing the Debtor's (and spouse's) estimate of average monthly income and expenses, as well as an estimate of amounts to be paid to holders of Claims herein. The Debtor's spouse shall devote his entire income to household expenses and to payments under the

Plan. As shown in the Cash Flow Budget, the Debtor believes she will be able to make the payments required under the Plan, and that the Plan is feasible.

4.3    **Pending Lawsuits**: The Debtor is not party to any lawsuits at this time aside from foreclosure actions filed against her with respect to various properties. The Debtor is exploring the potential for litigation regarding the validity, priority or extent of the asserted liens of Wells Fargo, BB&T and Deutsche Bank, as well as potential objections to the Proofs of Claim filed by such parties in the Bankruptcy Case.

4.4    **Objections to Claims:** The Plan sets forth the terms for parties in interest to make objections to Claims filed by creditors in the Bankruptcy Case.   Each Claim for which a Proof of Claim is filed by the Bar Date, or which is listed in the Debtor's schedules of liabilities (and is *not* listed as contingent, unliquidated, or disputed), shall be allowed unless an objection thereto is filed in accordance with Bankruptcy Rule 3007 within thirty (30) days after the Effective Date. Notwithstanding any term contained in the Plan requiring payment on account of any particular Claim on any particular date, such payment shall not be made: (a) in the case of an Administrative Claim for professionals' fees, unless and until an application seeking payment of professionals' fees and reimbursement of expenses is filed and approved by the Bankruptcy Court after proper notice to all parties in interest in this Bankruptcy Case; and (b) in the case of any other Claim, if an objection thereto has been timely filed, unless and until an order of the Bankruptcy Court allowing such Claim in whole or in part becomes a Final Order.

4.5    **Executory Contracts**: All pre-petition leases and contracts not previously assumed or rejected by order of the Bankruptcy Court, shall be rejected by the Debtor as of the Effective Date. Any Claim for damages arising from the rejection of an executory contract or unexpired lease, upon allowance, shall be an Unsecured Claim provided that Proof of such Claim is timely filed within thirty (30) days from the Effective Date or the holder will be forever barred

from asserting such Claim. The Debtor does not believe there are any leases or executory contracts to be assumed or rejected in this Bankruptcy Case. She has a post-petition lease regarding the 7th Street Property, and leases the 24th Street Property to tenants under a month-to-month lease. To the extent any leases or executory contracts exist, such will be rejected upon confirmation of the Plan.

    4.6    **Amendment to Claims**: No Proof of Claim to increase the amount of such Claim may be amended following the second business day before the day scheduled for the hearing on confirmation of the Plan. Any amended Proof of Claim must be served upon the Debtor's counsel.

    4.7    **Unclaimed Payments**: The holder of a Claim or any other person entitled to be paid under this Plan who has not claimed such person's payment within ninety (90) days of the disbursement or attempted disbursement of such funds under the Plan shall be deemed to have forfeited such person's right to receive such payment and any further payment pursuant to the Plan. A person shall be deemed to have failed to claim a payment if: (a) a check to such person is returned as undeliverable without a proper forwarding address; (b) such person's check has not been cashed; or (c) a check to such person could not be mailed or delivered because of the absence of a proper address to which to mail or deliver such check. Any such unclaimed payment shall be distributed *pro rata* to holders of Allowed Claims in the priority set forth in the Plan, excluding the Claim of the person who has failed to claim a payment.

    4.8    **Preferences and Avoidable Transfers**: The Debtor is not aware of any avoidable preferences or transfers of property. If, however, any recovery of a preference or avoidable transfer is accomplished, the net proceeds will be distributed to holders of Allowed Unsecured Claims.

## ARTICLE V
### Acceptance of the Plan

5.1     **Voting for the Plan**: The Plan sets forth certain matters concerning creditors' rights to vote regarding the Plan.   As stated therein, only those claimants whose Claims are "impaired" as defined in the Bankruptcy Code are entitled to vote either to accept or reject the Plan. Under the Bankruptcy Code, a Class of creditors accepts the Plan if more than one-half of the ballots that are timely received from members of the Class, representing at least two-thirds of the dollar amount of the Claims for which ballots are timely received, are voted in favor of the Plan. If a claimant is listed as impaired under the Plan, that claimant is entitled to cast a vote on the Ballot provided with the Plan.

5.2     **Nonconsensual Confirmation**: The Plan provides that, if any Impaired Class fails to accept the Plan by the requisite majorities, the Debtor may seek to confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

## ARTICLE VI
### Feasibility of the Plan

The Bankruptcy Court must determine the feasibility of the Plan upon acceptance of the Plan by the claimants. As stated above and as shown in the Debtor's cash flow projections attached as Exhibit "B" to the Plan, the Debtor projects that the Plan is feasible because the available cash as well as the Debtor's business income will provide sufficient funding for payments under the Plan.

## ARTICLE VII
### Alternative to the Plan; Chapter 7 Liquidation Analysis

The Debtor believes that neither she nor any other party will be able to propose a Chapter 11 plan of reorganization that is more favorable to creditors than the Plan. No alternative plan has been proposed. Therefore, as a practical matter, the only alternative to the Plan is a liquidation of the Debtor's assets in a case under Chapter 7 of the Bankruptcy Code. Under the proposed Plan, the Debtor will pay holders of Allowed Unsecured Claims in full and shall pay to holders of Allowed

Secured Claims the indubitable equivalent of the value of the collateral underlying such Claims. Accordingly, creditors will receive no less than they would receive in a chapter 7 case, and the Debtor submits that creditors should vote in favor of the Plan.

## ARTICLE VIII
### Confirmation and Consummation of the Plan

8.1.     **Confirmation of the Plan**: The Bankruptcy Court may confirm the Plan only if it determines that the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code. The Bankruptcy Court must determine that the Disclosure Statement is adequate and includes information concerning all payments made or promised by the Debtor in connection with the Plan. It must also determine that the Plan is proposed in good faith and not by any means forbidden by law. Under Bankruptcy Rule 3020(b), the Bankruptcy Court may do so without receiving evidence if no objection is timely filed.

In particular, the Bankruptcy Code requires the Bankruptcy Court to find, among other things, that:

(1) the Plan has been accepted by the requisite votes of all Impaired Classes (i.e., two-thirds in dollar amount and greater than one-half in number of those voting Allowed Claims) unless approval will be sought under Section 1129(b) of the Bankruptcy Code in spite of the dissent of one or more such Classes;

(2) the Plan is feasible, which means that after confirmation, the Debtor will be able to perform her obligations under the Plan and continue to operate without further financial reorganization or liquidation;

(3) the Plan is in the best interests of the holders of Claims and Interests, which means that such holders will receive at least as much under the Plan as they would in a liquidation under Chapter 7 of the Bankruptcy Code; and

(4) all conditions mentioned above are met before it can confirm the Plan.

Thus, even if all Impaired Classes vote for the Plan, the Bankruptcy Court must make an independent finding that the Plan conforms to the Bankruptcy Code.

8.2    **Confirmation Hearing**: The Bankruptcy Court will hold a hearing on confirmation of the Plan beginning at a time and date set forth in the Order Approving the Disclosure Statement. Such hearing will take place at the United States Courthouse for the District of Maryland in Greenbelt, Maryland. You will be notified of the time and place of the hearing as well as the deadline to object to confirmation. At that hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether the Plan is feasible and whether it is in the best interests of the creditors. The Bankruptcy Court will then also receive and consider a ballot report prepared by the Debtor concerning the votes for acceptance or rejection of the Plan by the parties entitled to vote.   The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for any announcement made at the confirmation hearing to those in attendance.

8.3    **Confirmation without Acceptance**: Under Section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan despite not receiving the necessary acceptance of every Impaired Class if: (1) at least one Impaired Class has accepted the Plan; and (2) the Bankruptcy Court finds that the Plan does not discriminate unfairly and is fair and equitable to the rejecting Classes. In addition, the Debtor reserves the right, pursuant to Section 1126(e) of the Bankruptcy Code, to request the Bankruptcy Court to strike any acceptance or rejection of the Plan by any claimant as not being in good faith.

8.4    **Voting Instructions**: A Ballot to be used for voting to accept or reject the Plan is enclosed with all copies of this Disclosure Statement mailed to person entitled to vote. The ballot will contain instructions regarding the voting deadline and procedure.

ANY BALLOTS RECEIVED AFTER THE DEADLINE WILL NOT BE COUNTED.

ANY BALLOT WHICH IS EXECUTED BY THE HOLDER OF AN ALLOWED CLAIM BUT WHICH DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED TO BE AN ACCEPTANCE.   THE DEBTOR URGES CREDITORS TO VOTE TO ACCEPT THE PLAN.

8.5     **Discharge**: Pursuant to §1141(b)(5)(A) of the Bankruptcy Code, an individual reorganizing under Chapter 11 shall not receive a discharge until the completion of payments due under the Plan.   The Debtor has received a discharge in a prior case filed within seven years prior to this Bankruptcy Case, and she is not eligible to receive a discharge in this Bankruptcy Case.

### ARTICLE IX
### Events of Default

An event of default occurs when the Debtor fails to make the scheduled payments when due. If a default is not cured within 30 days after notice to the Debtor, any creditor may seek dismissal of the Bankruptcy Case.   If the Bankruptcy Case is dismissed, creditors will have whatever rights such creditors had prior to the Petition Date.

### ARTICLE X
### Tax Consequences of Plan to the Debtor and Claimants

This section is intended only to highlight certain Federal income tax aspects of the Plan involving the Debtor and does not purport to be an analysis of or advice regarding tax matters relevant to a decision to accept the Plan.

IN VIEW OF THE COMPLEXITIES OF THE TRANSACTIONS CONTEMPLATED UNDER THE PLAN, AND THE FACT THAT NEITHER RULINGS FROM THE IRS NOR OPINIONS OF COUNSEL HAVE BEEN REQUESTED OR OBTAINED WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN, THERE CAN BE NO ASSURANCES THAT ANY TAX CONSEQUENCES FORECAST IN THE PLAN WILL RESULT.   CLAIMANTS AND OTHER PARTIES IN INTEREST ARE URGED TO CONSULT WITH TAX ADVISORS

CONCERNING THE TAX CONSEQUENCES OF THE PLAN.

### ARTICLE XI
### Modification of the Plan

Debtor may modify the Plan at any time prior to the Confirmation Date as permitted by Section 1127(a) of the Bankruptcy Code.   Before or after the Confirmation Date or in the Confirmation Order, the Debtor or the Bankruptcy Court may remedy any defect or omission, or reconcile any inconsistencies in the Plan or Plan as modified, in such manner as may be necessary to carry out the provisions, purposes, and effect of the Plan, as modified.

### ARTICLE XII
### Retention of Jurisdiction

The Bankruptcy Court shall retain jurisdiction over the parties and the subject matter of the Plan and all matters related thereto until the Plan has been substantially consummated and the Bankruptcy Case closed, or until the Bankruptcy Case is dismissed or converted to another chapter. Specifically, the Bankruptcy Court shall retain jurisdiction to interpret and enforce the provisions of the Plan, to hear and determine any action concerning the allowance of Claims or expenses against the Debtor or the Bankruptcy Estate, to hear and determine actions brought to recover assets of the Debtor and property of the Bankruptcy Estate, and to issue any order necessary to implement, execute, or consummate the Plan.

### ARTICLE XIII
### Closing of the Bankruptcy Case

Unless the Bankruptcy Case is closed earlier, upon substantial consummation of the Plan, the Debtor will seek to have the Bankruptcy Case closed by the Bankruptcy Court.   To close the Bankruptcy Case, the Debtor will file an application for final decree showing that the case has been administered and that the Plan has been substantially consummated.

## ARTICLE XIV
### Notices to Debtor

All communications and notices relative to the Plan shall be in writing, may be delivered by hand, by fax or by nationally recognized overnight courier service and shall be deemed given one (1) business day after being so sent. If mailed by United States Mail, first-class, postage prepaid, all such communications and notices shall be deemed given five (5) days after being so mailed. All such notices shall be addressed to the Debtor in care of undersigned counsel.

## ARTICLE XV
### Conclusion

The Debtor submits that the Plan provides fair and equitable treatment to her creditors while permitting a reorganization of her indebtedness. She urges you to vote in favor of the Plan.

Dated: April 23, 2018.

                                        COHEN BALDINGER & GREENFELD, LLC

                                        By: */s/ Augustus T. Curtis*
                                             Augustus T. Curtis, Bar No. 26653
                                             2600 Tower Oaks Blvd, Suite 103
                                             Rockville, MD   20852
                                             (301) 881-8300
                                             Counsel for Debtor-in-Possession